IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

JIMMY TURNER,                              )
                                           )
            Plaintiff,                     )
                                           )
vs.                                        )          Case No. 7:11-cv-03741-TMP
                                           )
TAMKO BUILDING PRODUCTS, INC.,             )
                                           )
            Defendant.                     )

## MEMORANDUM OPINION

Before the court is defendant TAMKO Building Products, Inc.'s motion for summary judgment (Doc. 19). For the following reasons, the court finds that the motion is due to be granted, and a separate order granting the motion will be entered.[1]

### I. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former FED. R. CIV. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact,

---

[1] The parties expressly stated jointly in their Report of Parties' Planning Meeting (Doc. 12) that they consented to the exercise of magistrate judge jurisdiction under 28 U.S.C. § 636(c).

or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* at 323.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting former FED. R. CIV. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, the nonmovant may not merely rest on its pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the nonmovant has properly responded to a motion for summary judgment, the court "shall" grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The court's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

2

one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The evidence supporting a claim must be "substantial." *Marcus v. St. Paul Fire and Marine Ins. Co.*, 651 F.2d 379, 382 (5th Cir. 1981).  A mere scintilla of evidence is not enough to create a genuine issue of fact.  *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004); *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1249-50 (11th Cir. 2004).  If the nonmovant's evidence is so thoroughly discredited by the rest of the record and is evidence that no reasonable jury could accept, that evidence fails to establish the existence of a genuine issue of fact requiring a jury determination.  *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have reviewed the facts in the light depicted by the videotape."); *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1290 n. 3 (11th Cir. 2009).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249 (citations omitted); *see also Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden" so that there must be sufficient evidence on which the jury could reasonably find for the nonmovant.  *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the

3

evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

The failure to respond to a motion for summary judgment is not enough, in itself, to justify granting summary judgment. Indeed, Rule 56(a) instructs that the court shall grant summary judgment only "*if the movant shows* that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (emphasis added). Thus, a court "may neither grant nor deny summary judgment by default." James Wm. Moore et al., *Moore's Federal Practice*, § 56.99[b] (3d ed. 1997). As noted by the Advisory Committee, "summary judgment cannot be granted by default *even if there is a complete failure to respond to the motion*, much less when an attempted response fails to comply with Rule 56(c) requirements." FED. R. CIV. P. 56 advisory committee's note (emphasis added). Because "the district court cannot base the entry of summary judgment on the mere fact that [the motion for summary judgment] is unopposed, it must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004). Utilizing these standards, the court undertakes the analysis of whether the defendant has shown that it is entitled to judgment as a matter of law.

## II. Facts Relevant to Summary Judgment

Applying the standards described above to the evidence presented by the parties, the following facts are undisputed or, if disputed, are taken in a light most favorable to the non-moving plaintiff.

4

In October 2005, plaintiff Jimmy Turner (hereafter "plaintiff"), an African American man, was hired to work as a laborer in the production department of defendant TAMKO's (hereafter "defendant") Tuscaloosa, Alabama plant. (Doc. 19-1, p. 1). Defendant is a manufacturer of building products. *Id.* On or around February 20, 2006, plaintiff was awarded the position of forklift operator, which paid more than a laborer position. *Id.*

When defendant has a vacant position to fill in the production department, the vacancy is posted with a list to be signed by employees interested in applying and bidding for the vacant position. The position then is awarded to a successful bidder, apparently on the basis of seniority. (Doc. 19-1, p. 2). Even though employees occupy "bidded" positions, they may be assigned temporarily to positions other than those bid for in order to fill the spots of other employees absent on that shift or to meet production needs. *Id.*

TAMKO maintains an electronic timekeeping payroll clock system requiring employees to swipe a card to clock in and out of work. *Id.* When employees work a position other than their "bidded" positions, they are to swipe their time card, hit a transfer button on the time clock, locate a card with the name of the position or machine on which they will work on that shift, and swipe the position/machine card. (Doc. 21-4, pp. 3-4).[2] This system ensures employees will be paid the correct rate for the position worked. *Id.* Employees also work overtime hours for various reasons, whether to cover for absent workers or to meet special project demands. *Id.*

At the end of 2009, plaintiff complained verbally to foreman Eugene Terry (hereafter "Terry") that a white coworker with less seniority, Lee Smith (hereafter "Smith"), was allowed to

---

[2] The citations to record refer to the document numbers and page numbers assigned by the court's CM/ECF electronic filing system upon the filing of the evidentiary materials submitted by the parties.

5

work as a laminator while plaintiff was working as a forklift operator.  (Doc. 27-1, pp. 10-11).

Plaintiff "guessed" that the reason for this was that Smith was Caucasian while plaintiff is African

American.  *Id.*  Plaintiff was told by Terry to speak to foreman/production manager Mike Nash

(hereafter "Nash") about this, and plaintiff did so but did not complain to anyone else.  (Doc. 27-1,

p. 11).  Nash stated that he would look into plaintiff's complaint, but plaintiff never received any

other response from Nash.  *Id.*

After working as a forklift operator, plaintiff worked as a shingle machine operator.

(Doc. 27-1, pp. 5-6).  While working overtime hours, plaintiff trained for the feltracker position.  *Id.*

In August 2009, defendant posted a feltracker position.  (Doc. 21-4, p. 4-5).  The feltracker

position involves working with fiberglass, which can be a skin irritant and collect on clothing, and

thus the position is deemed to be unattractive to many.  *Id.*  No one bid on the position.[3]  *Id.*  The

---

[3]  Although plaintiff argues in brief that he bid for the felt racker position in August 2009,
there is no record evidence of this.  Plaintiff testified in deposition that, at the time Lee Smith was
awarded the felt racker position, he could not recall whether anyone bid for the job.  (Doc. 27-1,
p. 12, Depo. p. 46)  Moments later in the deposition, plaintiff again testified as follows:

Q:  — from the records, nobody bid on the position.
     And my question to you is, you said earlier, you didn't know if anybody bid
on it?
A.    Correct.  I don't know -- Lee worked on Line 1 felt racker.  I don't know if
anybody bidded on that position or not.
Q.    Including you?
A.    I know I signed a sheet for the felt racker position.  *That's when I was awarded
the job.*  [Italics added for emphasis].

(Doc. 27–1, p. 12, Depo. p. 48).  Because it is undisputed that plaintiff was formally awarded the felt
racker position in January 2010, this testimony makes clear that plaintiff bid on the job only in
January 2010, when he was awarded it.  He could not testify that he bid on the job, or that anyone
bid on the job, in August 2009, when Smith was awarded the position.  Thus, the actual undisputed
evidence is that supplied by TAMKO's records, that is, that no one bid the felt racker job in August
2009 and that various employees, including one African American, was asked in reverse seniority
order to take the job.  Smith was third employee approached.

position was offered at one point to Kelvin Boles, an African American man, but he turned it down. *Id.* After Boles turned down the job, it was offered to Smith. *Id.*

Four months later in January 2010, plaintiff also received a felt racker position. (Doc. 21-4, pp. 4-5). Since August 2009, approximately fourteen African Americans other than plaintiff have held feltracker positions with defendant. *Id.* During this time period, there have been eight Caucasians other than Smith to hold the position. *Id.*

In April and August of 2010, plaintiff received counseling sessions for poor performance as a felt racker. (Doc. 27-3) A counseling session is the first and least serious of defendant's disciplinary methods. (Doc. 21-4, p. 6) Counseling sessions do not involve loss of pay or any other employment benefit. *Id.* Plaintiff also was commended in May 2010 for volunteering to work while another employee attended a service award banquet. (Doc. 27-3).

On November 1, 2010, defendant eliminated one of its four shifts due to decreased product demand. (Doc. 21-4, p. 6). Both Smith and plaintiff were moved from the higher-paying felt racker position to forklift operator. *Id.*, at p. 7. At this time, the hourly wage for the felt racker position was $22.97, and the hourly wage for the forklift operator position was $20.17. *Id.*

On November 1, 2, 3, 4, 5, and 8 of 2010, plaintiff clocked-in as a felt racker although he was working as a forklift operator. *Id.* Management discovered this on November 8, 2010. (Doc. 21-4, p. 7). Production Manager Dan Thompson (hereafter "Thompson") met with plaintiff to ask why he had clocked-in as a feltracker. *Id.* Plaintiff stated that line leader Scott Pate (hereafter "Pate") had told him on earlier occasions, when he temporarily worked a non-"bidded" job, to continue to clock-in at the "bidded" job rate. Despite this explanation, plaintiff later testified that he simply

7

forgot to clock-in as a forklift operator.  (Doc. 21-1, pp. 20-22).  Pate was not his supervisor at the time of the November 1 change from felt racker to forklift operator and did not instruct him on the time clock on that occasion.  *Id.*

On November 9, 2013, plaintiff gave Thompson a document titled "File of Complaint" which stated that plaintiff had experienced numerous problems during his then-current shift, including not receiving help with the felt racker position and monthly or bi-monthly discipline.  (Doc. 19-1, pp 7-8).  Plaintiff further told Thompson that he had forgotten to clock in correctly and complained that his then-current supervisor, Clint Gray (hereafter "Gray"), had reviewed his time card and never brought this issue to his attention.  (Doc. 21-4, p. 3).  Thompson informed plaintiff that no other employee who moved to a new position on November 1 had clocked-in incorrectly.[4]  (Doc. 21-4, p. 8).  Plaintiff did not allege racial discrimination during discussions with Thompson.  *Id.*  Turner was suspended from employment pending an investigation by defendant.  *Id.*

After defendant's investigation, TAMKO General Manager Tom Deloughery (hereafter "Deloughery") decided that plaintiff's actions were deliberate and performed with the intention of

---

[4]  Plaintiff has offered the affidavit of Darrin Fields to the effect that Lee Smith also improperly clocked in as a felt racker, instead of as a forklift operator, after November 1, 2010. TAMKO's time records show, however, that Smith properly clocked-in as a forklift operator. Fields's affidavit fails to create a genuine issue about this because it is not based on personal knowledge nor does it contain admissible evidence on this point.  Fields testified that "When everyone's position changed in November, 2010, everyone in the Plant was aware that Lee Smith continued to clock in at felt-racker position while he worked on the forklift."  This simply fails to show that Fields had personal knowledge of this purported fact; it is nothing but speculation.  See FRCP 56(c)(4).  He does not testify that Smith told him this or that he otherwise was privy to Smith's time-keeping in a way that would give him personal knowledge of this alleged fact.  Because Fields's affidavit relies on gossip, hearsay, and speculation, this portion of it is due to be and hereby is STRICKEN.  Defendant's motion to strike is GRANTED.

receiving higher pay.  (Doc. 21-4, p. 9).  On November 15, 2010, plaintiff was terminated from his

employment with defendant.  (Doc. 21-4, p. 11).

On February 11, 2011, plaintiff filed an EEOC charge.  *Id.*  The text of plaintiff's EEOC

charge is as follows:

> I, a black male, was hired by TAMKO in October, 2005, in production.  Over time I was promoted to felt racker making approximately $22.00 per hour.  Previously, a white employee, Lee Smith, jumped me for several promotions.  I had more seniority over the white male who was not moved and continued to perform the felt rack position.  I asked Eugene Terry why I was demoted when I had more seniority and was told to ask Mike Nash, acting production manager.  Mike Nash gave me a run-around answer.
>
> While I worked at TAMCO, I would report problems to my supervisors.  I never received assistance.  The white employees would receive assistance when they reported similar problems.  I complained to my supervisor and never received relief.
>
> I requested to be on the list for overtime, but was never placed on the list.  White employees were placed on the list.  I complained to my supervisor and did not get placed on the list.
>
> In November, 2010, TAMKO moved everyone around.  I was moved from Felt Rack back to the Fork Lift.  I clocked in and out as I normally did.  Noone corrected me.  Scott Pate, a white male, my supervisor, had previously told me to clock in as I normally do when I cover a different position.  All the employees do this when they move around.  I worked November 1-4 in this position.  That following Monday, I was accused of clocking in improperly and suspended pending an investigation.  They claimed I violated company policy of "honesty and integrity".  Many white employees improperly clocked in and were not terminated.  Clint Gray, foreman, a white male, processes the time cards and never informed me it was improper.  He could have corrected the issue.  This was his job to correct time and make sure everyone clocked in properly.  On November 8, 2010, I wrote a letter requesting that I be treated fairly during the investigation.
>
> I feel as though I was discriminated against based on my race due to the fact the white employees were treated differently and I had complained to the supervisors of this problem.  I feel that I was targeted because of my complaint and set up to be terminated.

(Doc. 21-3, p. 34).

On March 10, 2011, defendant's counsel sent plaintiff a letter requesting $88.79, the amount plaintiff was overpaid.  (Doc. 21-4, p. 11).  Although plaintiff acknowledges that he was overpaid by this amount due to clocking-in incorrectly (Doc. 26, p. 30), he has not make such payment.  *Id.*

During plaintiff's employment, African-American employees on average worked more overtime hours than white employees, with African-American employees working an average of 10.9 hours of overtime per week, while white employees worked 6.9 overtime hours.  (Doc. 21-4, pp. 49-53).  Consistent with this, analysis of plaintiff's time records reveals that he worked more overtime on average than fellow employee Lee Smith.  *Id.*  Plaintiff worked an average of 8.77 hours of overtime per week, which is more than both the average overtime worked by Lee Smith (7.59 hours) and the average of all white production employees (6.9 hours).  *Id.*

## III.  Procedural History

Plaintiff filed the instant action against defendant on October 26, 2011.  (Doc. 1).  The complaint alleged causes of action for disparate treatment race discrimination pursuant to Title VII and for retaliation in violation of Title VII.  *Id.*  The disparate treatment claim includes failure to promote, disparate overtime allowance, wrongful discipline, and wrongful termination.  *Id.*  On November 18, 2011, defendant filed its answer to the complaint as well as a counterclaim for unjust enrichment related to the $88.79 plaintiff was overpaid.  (Doc. 3).  On March 23, 2012, plaintiff filed his answer to the counterclaim.  (Doc. 17).

Defendant filed the instant motion for summary judgment on September 11, 2012.  (Doc. 19).  The motion was accompanied by evidentiary material.  (Doc. 20; Doc. 21; Doc. 22).  On November 1, 2012, plaintiff filed his response in opposition to the motion for summary judgment.  (Doc. 26).  The response was accompanied by evidentiary material, including the affidavit of Darren

Fields. (Doc. 27; Doc. 27-5). Defendant filed a reply brief on November 15, 2012. (Doc. 28). Also on November 15, defendant filed a motion to strike the affidavit of Darrin Fields (Doc. 29). Plaintiff responded to that motion on November 27, 2012. (Doc. 30). Defendant replied on November 30, 2012. (Doc. 31).

## IV. Summary Judgment Analysis

Defendant is entitled to summary judgment as to all of plaintiff's claims. The court will deal with each claim in turn.

### A. Plaintiff's Title VII Race Discrimination Claims

Plaintiff has filed claims for race discrimination under Title VII, including claims for failure to promote, disparate overtime allowance, wrongful discipline, and wrongful termination. Defendant is entitled to summary judgment on each of these claims.

Plaintiff may establish a prima facie case of discrimination under Title VII by direct or circumstantial evidence. *Crawford v. Western Electric Co.*, 745 F.2d 1373, 1376 (11th Cir. 1984); *Oliver v. National Beef Packing Co., LLC*, 294 Fed. Appx. 455, 457 (11th Cir. 2008). The court finds that there is no direct evidence of discrimination in the present matter. Plaintiff's discrimination claims rely on circumstantial evidence.

To present circumstantial evidence of discrimination, plaintiff must meet the *McDonnell Douglas* standard by showing that (1) he belongs to a racial minority or member of another protected class, (2) he was qualified to perform his job or applied for and was qualified for a promotion, (3) he was subjected to an adverse employment action by defendant or was rejected for promotion despite being qualified, and (4) defendant treated similarly situated employees outside his racial or otherwise protected class more favorably or promoted equally or less-qualified employees outside

of his protected class. *Brown v. Alabama Dept. Of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010); *Rainey v. Holder*, 412 Fed. Appx. 235, 238 (11th Cir. 2011)*; McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To qualify as an adverse employment action under the third prong of the *McDonnell Douglas* framework, the employment action in question must have created a "serious and material change in the terms, conditions, or privileges of employment." *Rainey*, 412 Fed. Appx. at 238. Teasing, offhand comments, and isolated incidents that are not extremely serious do not rise to the level of discriminatory changes to terms, conditions, or privileges of employment. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999); *Alexander v. Opelika Schools*, 352 Fed. Appx. 390, 392 (11th Cir. 2009). The employment action must be adverse as viewed by a reasonable person under the circumstances. *Davis v. Town of Lake Park, Fla.*, 245 F.3d, 1232, 1238-39 (11th Cir. 2001).

Once plaintiff has made a prima facie showing of discrimination, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for their actions. *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002); *Brown*, 597 F.3d at 1174. Under Title VII, the burden on defendant to proffer a legitimate, non-discriminatory reason is "exceedingly light." *Meeks v. Computer Associates Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994); *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1495 (11th Cir. 1989). If defendant articulates one or more legitimate reasons, the presumption of discrimination is rebutted and the burden shifts to plaintiff to offer evidence that defendant's alleged reason is merely a pretext for discrimination. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086-87 (11th Cir. 2004); *Brown*, 597 F.3d at 1174. Plaintiff's evidence of pretext must reveal such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable fact

12

finder could find it unworthy of credence. *Thompson v. Carrier Corp.*, 358 Fed. Appx. 109, 112, (11th Cir. 2009), quoting *Vessels v. Atlanta Indep. School System*, 408 F.3d 763, 771 (11th Cir. 2005). Defendants's burden to offer a legitimate reason is merely one of production; plaintiff bears the burden of persuasion. *Meeks*, 15 F.3d at 1021.

### 1. Plaintiff's Failure to Promote Claim

Defendant is entitled to summary judgment on plaintiff's failure to promote claim because the claim is time-barred and plaintiff has not made a prima facie case of discriminatory failure to promote.

The timely filing of an EEOC charge is a prerequisite to a Title VII lawsuit. *Freeman v. Koch Foods of Alabama*, 777 F. Supp. 2d 1264, 1274 (11th Cir. 2011); *Houston v. Army Fleet Servs., L.L.C.*, 509 F. Supp 2d 1033, 1040 (M.D. Ala. 2007); *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 449 (11th Cir. 1993). In Alabama, unlawful employment practices must be complained of in a charge of discrimination filed with the EEOC within 180 days after the alleged unlawful practice occurred. *Freeman*, 777 F. Supp. 2d at 1276; *Lampkin v. United Parcel Serv.*, 1:06-CV-0538-WKW, 2008 WL 1925120 (M.D. Ala. 2008); *see also Ledbetter v. Goodyear Tire & Rubber Co .*, 127 S. Ct. 2162, 2169 (2007). A failure to promote is a discrete act, and a timely EEOC charge must be filed with respect to each alleged violation. *Ledbetter*, 127 S. Ct. at 2175; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

In August of 2009, Lee Smith was promoted to the feltracker position. (Doc. 19-1, p. 4). Plaintiff's EEOC charge was filed on February 11, 2011. (Doc. 21-3, p. 34). Thus, more than 180 days elapsed between the failure to promote and the filing of the EEOC charge. The claim that plaintiff was discriminatorily denied the promotion is therefore time-barred.

However, even if the failure to promote claim were not time-barred, it would still fail because plaintiff has not made a prima facie showing of race discrimination. Specifically, the second, third, and fourth prongs of the *McDonnell Douglas* framework are not met. The second prong requires a showing that the plaintiff applied for the promotion or that the employer otherwise was aware of his interest in it. The third prong requires that plaintiff be rejected for the promotion in question despite his qualifications, and the fourth prong requires that other equally or less-qualified employees outside plaintiff's protected class received the promotion. *Brown*, 597 F.3d at 1174.

Under the second prong of the prima facie showing, the plaintiff must show that he applied for the promotion given to Lee Smith, or that TAMKO was otherwise aware of his interest in it. Generally, it cannot be said that an employer engages in discrimination by failing to promote an employee it does not know is seeking or wants the promotion. In promotion cases, the plaintiff's prima facie showing requires the following:

> For a failure to promote claim, the plaintiff establishes a prima facie case by showing that: (1) he is a member of a protected group; (2) he was qualified for *and applied for the promotion*; (3) he was rejected in spite of his qualifications; and (4) the person who received the promotion was not a member of the plaintiff's protected group. *Walker v. Mortham*, 158 F.3d 1177, 1185-93 (11th Cir. 1998). Where an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show that he applied for the position, but only that the employer had some reason to consider him for the position. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir.2005).

*Paul v. Americold Logistics, LLC*, 450 F. App'x 850, 852-53 (11th Cir. 2012). In this case, it is agreed that defendant TAMKO formally posted the promotion to felt racker, but there is no evidence that plaintiff applied or bid for the job in August 2009. *See* footnote 3, *supra*. Thus, he cannot show that TAMKO had any reason to believe he was interested in the promotion.

14

As to the third prong, because it is undisputed that plaintiff did not bid for or seek the felt racker position in August 2009 when Lee Smith received the position, he was not "rejected" for it despite his qualifications.  Plaintiff was not rejected for the promotion because he never applied for it.  Because he did not apply, plaintiff's race and qualifications compared to Smith were never considered by TAMKO and were not the cause for TAMKO's selection of Smith.  Smith was given the promotion in August 2009 because no one bid for the job and he accepted it after two other employees (one of whom was African-American) decline it.  Plainly put, plaintiff was not rejected for the job because of his race, but because he did not demonstrate an interest in it.

As to the fourth prong, while Lee Smith, who is outside plaintiff's protected class, was promoted to feltracker before plaintiff, defendant offered the promotion to Kelvin Boles, an African-American man, before offering it to Lee Smith.  (Doc. 19-1, p. 4).  In addition, defendant has employed fourteen African-American employees other than plaintiff as feltrackers as opposed to only eight Caucasian employees other than Smith in that capacity.  *Id.*  There plainly is no history of racial discrimination with respect to the felt racker job.

Given this evidence, plaintiff has failed to make a prima facie showing of discriminatory failure to promote in August 2009 for the felt racker job given to Lee Smith.  This is the only promotion denial identified by plaintiff.  Indeed, the next time a felt-racker vacancy was posted, in January 2010, plaintiff bid for it and was awarded the promotion.  Thus, insofar as plaintiff alleges a discriminatory denial of a promotion, it is both time barred and meritless.

### 2.  Plaintiff's Disparate Overtime Allowance Claim

Plaintiff's overtime claim is due to be dismissed because plaintiff has similarly not established a prima facie case of discrimination.  Specifically, the third and fourth prongs of the

*McDonnell Douglas* standard are lacking. There is no evidence that plaintiff suffered an adverse employment action nor that similarly situated employees outside of plaintiff's protected class were treated more favorably.

Defendant has presented evidence that plaintiff, in fact, was allowed more overtime than Lee Smith during the weeks in which they both worked. Defendant's expert, Dr. Janet Thornton, a Ph.D. labor economist from Florida State University, examined defendant's payroll data for the relevant time periods and concluded not only that plaintiff worked more overtime hours than Smith during weeks in which they both worked, but that African American employees worked more overtime hours than Caucasian employees on average per week. (Doc. 21-4, pp. 46-49). This evidence shows that plaintiff did not suffer an adverse employment action in the form of disparate overtime allowance. It also shows that similarly situated employees outside plaintiff's class were not treated more favorably by defendant. Plaintiff's uncorroborated testimony that Smith received more overtime is too insubstantial to create a genuine issue of fact in light to the clear and undisputed documentary evidence in the time records.[5] Thus, there is no prima facie case of discriminatory overtime allowance by defendant.

### 3. Plaintiff's Discriminatory Discipline Claim

Plaintiff's discriminatory discipline claim also is due to be dismissed because much of the claim is outside the scope of plaintiff's EEOC charge, plaintiff has failed to establish a prima facie

---

[5] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). A mere scintilla of evidence is not enough to create a genuine issue of fact to defeat summary judgment. *Johnson v. Niehus*, 491 Fed. App'x 945, 949 (11th Cir. 2012) citing *Kesinger v. Herrington*, 381 F.3d 1243, 1249–50 (11th Cir. 2004).

case of wrongful discipline, and, even if plaintiff had made such a case, he has failed to show that defendant's proffered reason for the discipline is pretextual.  Plaintiff's discipline claim involves counseling sessions which he claims are adverse employment actions, as well as a claimed wrongful suspension from employment.

Plaintiff's discipline claims pertaining to any verbal counseling sessions are beyond the scope of his EEOC charge and thus not properly part of his judicial complaint.  The starting point for determining the permissible scope of a judicial complaint is the EEOC charge and investigation, and the crucial element of a discrimination charge is the factual statement contained therein.  *Freeman v. Koch Foods of Alabama*, 777 F. Supp. 2d 1264, 1277 (M.D. Ala. 2011); *Houston v. Army Fleet Servs., L.L.C.*, 509 F. Supp. 2d 1033, 1042 (M.D. Ala. 2007).

Plaintiff's EEOC charge, the full text of which is included *supra*,  makes no mention of discriminatory discipline through verbal counseling sessions, and therefore such claims cannot withstand summary judgment scrutiny.  However, even if the EEOC charge had mentioned discriminatory counseling sessions, the court finds that such counseling sessions are not adverse employment actions because plaintiff did not lose any benefit of employment, such as compensation, as a result of the sessions.  *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1238-40 (11th Cir. 2001); *Hooks v. Bank of America*, 183 Fed. Appx. 833, 836 (11th Cir. 2006).

Plaintiff's wrongful suspension claim likewise cannot withstand summary judgment analysis.  To establish a claim for discriminatory discipline generally, plaintiff must show that he engaged in misconduct similar to that of a person outside of his protected class and that the disciplinary measures enforced against him were more severe than those enforced against the persons outside his class.  *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).  The comparator's misconduct must

be "nearly identical" to the quality and quantity of plaintiff's. *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). To establish a valid comparator, plaintiff must show that the person imposing the discipline knew of the comparator's alleged misconduct and consciously overlooked it. *Marshall v. Mayor of Savannah*, 366 Fed. Appx. 91, 99 (11th Cir. 2010).

To succeed on a wrongful suspension claim, plaintiff must show that a discriminatory reason motivated defendants to suspend plaintiff or that defendants' proffered explanation for the suspension was unworthy of credence and merely pretextual. *Bennett v. Chatham County Sheriff Dept.*, 315 Fed. Appx. 152, 160 (11th Cir. 2008); *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005); *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000). Plaintiff has not met this burden.

In his response, plaintiff alleges that three Caucasian males are comparators for his wrongful discipline and termination claims. These Caucasian males are Greg Colburn, Mike Hutchinson, and Lee Smith. (Doc. 26, p. 8). However, the court agrees with defendant that these three are not proper comparators under Title VII.

Plaintiff argues that Greg Colburn clocked in improperly and was not disciplined for it, yet plaintiff's deposition testimony shows that plaintiff has no personal knowledge of whether or not Greg Colburn ever did so. Plaintiff argues that Greg Colburn clocked in as a line leader while working as a forklift operator because, as a line leader, Colburn would have come into work four hours before the normal shift to cover as a line leader and then work as a forklift operator once the normal shift began. Plaintiff contends that Colburn never clocked in as a forklift operator after the normal shift began and continued to be paid the rate of a line leader while working as a forklift operator. (Doc. 21-1, Turner Depo. pp. 147-48). Plaintiff further testified that he knows this because

18

he could see the time-clock machine at all times during his shift and did not see Colburn clock in correctly.  *Id.*  The court finds this argument is without merit.  The court cannot accept plaintiff's argument that he would have seen Colburn clock in correctly as evidence that Colburn clocked in improperly.  Plaintiff did not testify that he actually examined Colburn's time card, so he can only speculate what pay status Colburn actually clocked into.  Moreover, unlike plaintiff, whom TAMKO accused of clocking in improperly on multiple days, there is no evidence that Colburn repeatedly and deliberately clock in at a higher pay rate than authorized.  Even plaintiff's testimony refers only to a single instance where Colburn properly clocked in as a line leader four hours before his normal shift began and then failed to transfer his clock in to a forklift operator status once the normal shift began.  Colburn's situation was not "nearly identical" to plaintiff's, and, thus, he is not a proper comparator.

As to Mike Hutchinson, plaintiff testified that he had no personal knowledge of whether or not Mike Hutchinson clocked in improperly.  (Doc. 21-1, Turner Depo. pp. 124-25, 175).  Thus, Mike Hutchinson is not a proper comparator.

As to Lee Smith, much of plaintiff's arguments rely on the Darrin Fields affidavit, which the court has stricken as not be based on personal knowledge and containing hearsay and speculation.  Fields's affidavit testimony that "everyone in the Plant was aware" that Smith was clocking in improperly simply fails to create a genuine issue of fact to contradict TAMKO's actual time records.  The court will not consider that affidavit as admissible evidence.  Furthermore, defendant's clock data from November, 2010 shows that Smith did not clock in improperly as a felt racker when he was working as a forklift operator.  (Doc. 21-4, p. 9).  Lee Smith is not a proper comparator.

19

In addition, TAMKO has presented evidence that no employee other than plaintiff clocked in improperly during the time period in question. (Doc. 21-4, pp. 9, 41). There is also no evidence that Tom Deloughery, the one responsible for imposing the discipline on plaintiff, knew of any alleged misconduct on the part of Colburn, Hutchinson, or Smith. Plaintiff himself testified that he did not tell anyone working for defendant that Lee Smith was clocking in erroneously. (Doc. 21-4, Turner Depo. pp. 121-22). He further testified that he was not aware of anyone at TAMKO knowing about Colburn's alleged misconduct. *Id.* at pp. 147-48. The evidence shows that these three men are not proper comparators for plaintiff. With no comparator, plaintiff cannot make a case of discriminatory discipline.

Further, defendant has proffered legitimate, non-discriminatory reasons for suspending plaintiff, reasons which plaintiff has not shown to be pretextual. Defendant's Employee Handbook states that employees may be indefinitely suspended pending the outcome of an investigation leading to discharge, and that suspensions are without pay. (Doc. 21-4, p. 9). Plaintiff has not presented any evidence that defendant's reason for suspending his employment was merely a pretext for discrimination. The evidence shows clearly that, in fact plaintiff continued to clock in as a felt racker after November 1, when his shift was terminated and he returned to the position of forklift operator. There plainly existed a reason for TAMKO to investigate whether plaintiff deliberately clocked in improperly, and this fact means that plaintiff cannot show that the reason was a mere pretext for discrimination. Plaintiff's wrongful discipline claims, both for the counseling sessions and suspension of employment, cannot withstand summary judgment.

20

### 4.  Plaintiff's Wrongful Termination Claim

Defendant is entitled to summary judgment as to plaintiff's wrongful termination claim because plaintiff has failed to make a prima facie showing of race discrimination and defendant has proffered legitimate, non-discriminatory reasons for plaintiff's termination, which he was not shown to be pretext.  To establish a prima facie case of discriminatory discharge, plaintiff must show (1) he is a member of a protected class, (2) he was qualified for the job from which he was discharged, (3) that he was discharged, and (4) that either his former position was filled by someone not in his protected class, that he was terminated while others having comparable or lesser qualifications and not in his protected class were retained, or that he was subject to a different application of work or disciplinary rules.  *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995); *Jones v. Lumberjack Meats, Inc*., 680 F.2d 98, 101 (11th Cir. 1982); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether those employees were involved in or accused of similar conduct and were disciplined in different ways.  *Holifield*, 115 F.3d at 1562. Plaintiff must show that he and the non-minority employees were similarly situated in all relevant respects.  *Id.*  Should plaintiff fail to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.  *Id.*

Plaintiff has failed to meet the fourth element for a prima facie case of discriminatory discharge.  As noted above, plaintiff has attempted to show that he was subjected to a different application of work rules than similarly situated Caucasian employees, namely Colburn, Hutchinson, and Smith.  The court has determined these three men are not proper comparators under Title VII,

for there is no evidence that these three committed the same misconduct as plaintiff.  Therefore, plaintiff has failed to meet his burden of showing a prima facie case of discriminatory discharge.

Even if plaintiff had made a prima facie showing of discriminatory termination, defendant has proffered legitimate, non-discriminatory reasons for plaintiff's discharge, reasons which plaintiff has not shown to be pretextual.  Tom Deloughery, defendant's General Manufacturing Manager who made the decision to terminate plaintiff, has testified that, after conducting an investigation into plaintiff's conduct, he believed that plaintiff's action were deliberate with the intention of receiving a higher rate of pay for a job he was not performing.  (Doc. 21-4, p. 9).  Even assuming arguendo that defendant's proffered reasons for terminating plaintiff are illogical or mistaken, it is not the function of the court to second guess defendant's business decisions; an honest yet mistaken belief in the nondiscriminatory reason for termination offered by defendant will provide sufficient basis for that termination even if the reason offered is foolish, trivial, or outright baseless.  *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999)*; Boyd v. Province Healthcare Co., Inc.*, CIV.A. 04-0825-WSD, 2005 WL 3132394 (S.D. Ala. 2005).  Defendant has presented evidence that it honestly believed and still believes that plaintiff was intentionally clocking in as a felt racker while working as a forklift operator.

## B.  Plaintiff's Title VII Retaliation Claim

Defendant is entitled to summary judgment on plaintiff's retaliation claim because plaintiff has failed to establish a prima facie case of retaliation under Title VII.  To establish a prima facie case of retaliation, plaintiff must show that (1) he engaged in statutorily protected expression, (2) he suffered an adverse employment action, and (3) there is some causal connection between these two events.  *Thomas v. Cooper Lightning, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).  Whether or not

22

an employment action is adverse and whether there exists a causal connection are analyzed under an objective framework, requiring a "reasonable belief" that the action was adverse and that a causal connection exists.  *Id.*  To establish a case of retaliatory discharge, plaintiff must show that he (1) engaged in protected opposition to Title VII discrimination, (2) that he was terminated simultaneously with or subsequent to such opposition, and (3) that there was a causal link between the protected opposition and the termination.  *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989).

Plaintiff must have a good faith, reasonable belief that defendants engaged in unlawful discrimination for opposition to such action to be considered statutorily protected expression. *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 297, 400 (11th Cir. 1989); *Little*, 103 F.3d at 960.  This is both a subjective and objective test.  *Little*, 103 F.3d at 960.  The causal connection prong requires plaintiff to show that the decision-maker was aware of the protected opposition and that the adverse employment action was not wholly unrelated to the protected opposition.  *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008).

First, the court is not persuaded that there is a causal connection between the protected opposition and plaintiff's termination.  The evidence shows that the only complaint of race discrimination made by plaintiff was to Eugene Terry and then Mike Nash in late 2009.  (Doc. 19-1, pp. 3-4).  He complained because Lee Smith was allowed to work as a laminator while he was still working as a forklift operator, and he suspected discriminatory animus was the reason.  *Id.*  He did not complain to anyone else thereafter.  *Id.*  This single complaint, made in late 2009, is too far removed in time from plaintiff's termination in November, 2010, a year later.  In addition, there is no evidence that the decision-maker, Tom Deloughery, knew of plaintiff's complaint to Terry and

23

Nash when he made the decision to terminate plaintiff's employment.  There is no reason in the evidence to find any possible causal connection between plaintiff's 2009 complaint to Terry and Nash and the decision by Deloughery to terminate plaintiff's employment in November 2010. Defendant is entitled to summary judgment on plaintiff's retaliation claim.

## C.  Defendant's Unjust Enrichment Counterclaim

Defendant has filed a counterclaim against plaintiff for unjust enrichment[6] to recover the $88.79 plaintiff was overpaid when he clocked in as a felt racker instead of a forklift operator.  The court finds summary judgment is due to be granted in favor of defendant TAMKO on this claim.

To prevail on a claim of unjust enrichment under Alabama law, TAMKO must show that (1) Turner knowingly accepted and retained a benefit, (2) that was provided by TAMKO, and (3) that TAMKO has a reasonable expectation of compensation.  *Matador Holdings, Inc. v. HoPo Realty Investments, L.L.C.*, 77 So. 3d 139, 145 (Ala. 2011).  Plaintiff Turner has knowingly accepted and retained a benefit, the overcompensation, as he has admitted he received it and has not paid it back. (Doc. 21-1, Turner Depo. pp. 79-80, 139-40).  Indeed, in his brief in opposition to defendant's motion, he concedes that he received the overpayment and has not returned it to TAMKO.   He argues instead that TAMKO's demand for repayment is simply another instance of racial harassment because TAMKO has never demanded that Colburn, Hutchinson, and Smith repay amounts they were allegedly overpaid.  Without repeating the discussion of these arguments addressed above, it

---

[6]  The court has jurisdiction to adjudicate the defendant's state-law claim for unjust enrichment because it is within the court's supplemental jurisdiction supplied by 28 U.S.C. § 1367(a).   Whether plaintiff was overpaid in November 2010 involves the same factual controversies and evidence as plaintiff's Title VII discriminatory discharge claim.  It arises from the same facts as to be within the same case or controversy of the claim for which the court possesses jurisdiction under 28 U.S.C. § 1331.

is enough to say that plaintiff has offered no evidence establishing even a genuine issue of fact regarding improper clocking in by or overpayments to these individuals.  Indeed, the evidence is quite the contrary.  Plaintiff simply has no personal knowledge or other evidence that these three workers were overpaid in a manner similar to plaintiff.  Thus, TAMKO is entitled to summary judgment on its unjust enrichment counterclaim.

**V.  Conclusion**

Summary judgment is due to be granted in defendant TAMKO's favor on all of plaintiff's Title VII claims as well as its unjust enrichment counterclaim.  Defendant's motion for summary judgment will be GRANTED and judgment entered in a separate order.

DONE this 17th day of December, 2013.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE